HOFFMAN *v.* EPPERSON.

4-7885                                                    193 S. W. 2d 1008

Opinion delivered April 29, 1946.

*John G. Moore* and *J. M. Smallwood,* for appellant.

*Charles L. Farish,* for appellee.

McHANEY, Justice. Appellee brought this action against appellants to recover damages for the alleged wrongful conversion by them of his right to redeem certain bales of cotton pledged by him in 1938 to the Commodity Credit Corporation to secure certain promissory notes for money loaned to him by the C. C. C.

Only 37 bales of cotton are involved on this appeal. Appellee conceded in the trial court that, as to one of the bales, he did sell to appellants his right of redemption on April 30, 1941, and was paid $1 therefor. The only dispute between the parties as to this bale was whether the consideration was paid with a dollar bill, as testified to by him, or was paid by a check for $1, bearing that date, indorsed by him, and cashed in the bank, where the transaction took place, on the same date, as testified to by Oates. While appellee sued for the conversion of 41 bales, it developed that Morrilton Cotton Oil Co. acquired his equity in three of them, so these three bales are not here involved.

Trial to a jury resulted in a verdict and judgment against appellants in the sum of $660, but which was later reduced by the court to $595.59.

Only two questions are presented by this appeal: (1) that the court should have directed a verdict for appellants on their request so to do because the evidence conclusively shows that appellee sold and released his equity in the cotton to appellants; and (2) because the instruction on the measure of damages was not supported by any competent evidence, and that the verdict was based on. speculation and conjecture.

1. On the first question, that is, whether appellee executed and delivered the appellants the written releases of his cotton to the C.C.C. appearing in the record, bearing his signature, we think an extended discussion is unnecessary. Appellee denied that he signed these documents and stated that the signatures thereon were good imitations of his signatures, but they were not his; that he had not sold any of his equities in this cotton to any one, except the one bale above mentioned; and that he did not know that his loan contracts had been taken up until he was notified that he had only one bale left which he sold to appellants. Mr. Oates for appellants testified he acquired this cotton on what he believed to be documents executed by appellee and in the usual course of business. We think the evidence on this dispute

made a question of fact for the jury. There are several facts and circumstances that lead us to believe that appellee may be mistaken in stating that he did not sign the documents in question and in stating that the so-called "blue sheets," which were carbon copies of his original contracts and obligations with the C.C.C., were destroyed by fire when his home burned on April 28, 1941. The "blue sheets" apparently were not destroyed by fire, but are in this record. But we are not the triers of the facts when they are in dispute, as they are here. The jury has found that he did not release his cotton to appellants, and we cannot say that this finding is not supported by any substantial evidence.

2. The court instructed the jury that if they found for appellee, he would be entitled to recover the market value of the cotton at the time he demanded restoration from appellants, plus interest, less the amount of the loan thereon, the storage charges, and any equity of appellants therein by reason of the purchase or acquisition of the warehouse receipts, if any. Appellants objected specifically to this instruction in allowing a recovery of the market value of the cotton, "for the reason that there is no testimony in the record as to the type, grade, class, or price of the cotton grown by Mr. Epperson."

We think this objection is well taken and that the court erred in giving said instruction without some proof of the kind or type of cotton it was, the grade, and the market value thereof. There is no such proof in this record. One witness testified that he was familiar with the type of cotton grown in this territory; that in 1938 the average loan contract made to the farmer was around 9 cents a pound; that in 1941 the average price of cotton in this territory was 17½ cents per pound. We think appellee was required to prove something more than this in order to establish a measure of damages. It was not shown what the staple of the cotton was or the grade or its condition, or its weights. All these facts could have been obtained from someone, perhaps from the compress company, perhaps from the C.C.C. or the Federal Reserve Bank, in Little Rock, or perhaps from appellants who bought the cotton, redeemed it from C.C.C., and received

the warehouse receipts therefor. These receipts showed the weight of each bale, and it is well known that the price of cotton is determined by the length of the staple and the grade or classification thereof as shown by the sample. We think appellee himself, or perhaps his landlord could testify as to the kind, staple and grade of his cotton. We are not without evidence of the weight of the cotton as some of the documents show the total weight of the bales covered by them. While this cotton was grown on river bottom land, it is also well known that such cotton varies widely in staple and grade, and, therefore, price. Nor is it proven what the cost was to redeem from the C.C.C. and what the warehouse charges were.

The evidence presented is too indefinite and does not furnish a substantial basis on which to base a verdict. The verdict and the consequent judgment are, therefore, based on conjecture.

For this error, the judgment is reversed and the cause remanded for a new trial.